## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| HENRY TODD VAN DELLEN, | Case No. 19-CV-190 (NEB/HB) |
| Plaintiff, | |
| v. | ORDER ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT |
| AON SERVICE CORPORATION, | |
| Defendant. | |

Defendant Aon Service Corporation terminated Plaintiff Henry Todd Van Dellen from his position as Senior Vice President and Producer in 2017. Van Dellen sued Aon, alleging that his termination was age discrimination in violation of the Minnesota Human Rights Act, and that Aon deprived him of severance benefits in violation of the Employee Retirement Income Security Act of 1974 ("ERISA") § 510, among other claims. Aon moves for summary judgment. (ECF No. 39.) For the following reasons, the Court grants in part and denies in part the motion.

## BACKGROUND

The Court draws the following background from the summary judgment record, viewing the evidence in the light most favorable to Van Dellen. *See Schilf v. Eli Lilly & Co.*, 687 F.3d 947, 948 (8th Cir. 2012). Aon provides risk management services, insurance and re-insurance brokerage, human capital and management consulting, and specialty

insurance underwriting. (ECF No. 19 ("Complaint" or "AC") ¶ 2.) Van Dellen started working for Aon in September 2005 as a Senior Vice President and the Health and Benefits ("H&B") Practice Leader for Aon's Minneapolis office. (ECF No. 48-1 ("Pl. Dep.") at 22, 45.) Van Dellen was the H&B Practice Leader for over nine years. (*Id*. at 23.) In or around November 2014, Van Dellen moved into the role of Producer, and Raymond Longo, the Resident Managing Director of the Minneapolis office, became his supervisor. (Pl. Dep. at 49; ECF No. 43 ("Longo Decl.") ¶¶ 1–2.)

"The primary focus of a Producer is business development." (ECF No. 42-2 at 6.) Producers are expected to generate revenue for Aon "by producing new business; this entails selling Aon's services and products to Aon clients." (Longo Decl. ¶ 3.) If a Producer generates contracted revenue at least equal to his or her base salary, Aon considers the Producer to have "validated" for that year. (Pl. Dep. at 82.) Van Dellen "validated" every year he was a Producer. (*Id*. at 83.) As a Producer, Van Dellen's annual sales goal was approximately three times his base salary of $234,714, or $675,000. (*Id*. at 65, 67, 203.) Van Dellen testified that this "stated policy" regarding validation and hitting a three-times-base-salary sales goal "was not honored in practice." (*Id*. at 67.)

Aon's Minneapolis office employed seven Producers in 2014, five Producers in 2015, four Producers in 2016, six Producers in 2017, and four Producers in 2018. (ECF No. 48-4 at 41 (Aon Interrog. Ans. 19).) Aon admits that no Producer reached the three-times-base-salary sales goal in the years 2014–2016. (ECF No. 48-4 at 42 (Aon Interrog.

Ans. 21).) Only one Producer met the two-times-base-salary sales goal in 2014, none met it in 2005, and two Producers met it in 2016. (*Id*.) The equaling-base-salary sales goal (validating) was met twice in 2014 and 2015, and once in 2016. (*Id*.) In 2017 and 2018, only one Producer reached the three-times-base-salary goal; no other Producer managed to generate sales twice their base salary. (*Id*.) No Producer reached the equaling-base-salary goal in 2017, and only one met this goal in 2018. (*Id*.)

While Van Dellen never reached the three-times-base-salary sales goal, he was the top Producer in the Minneapolis office for all lines of business in 2015 and 2016. (Pl. Dep. at 183, 190–91, 58.) Longo held monthly meetings with Producers, and Van Dellen was always aware of his sales goal and production throughout the year. (*Id*. at 97–99; 132–34.) Before 2017, the only one-on-one discussions Longo had with Van Dellen regarding his production in relation to his sales goal were during performance reviews. (*See id*. at 131.)

Van Dellen's 2015 performance review rated him "below expectations" for new business production. (ECF No. 42-1 at 132.) For 2016, Van Dellen received his performance review in a meeting with Longo in March 2017. (Pl. Dep. at 107.) His overall 2016 rating was "meets expectations." (ECF No. 42-1 at 150 ("2016 Review").) In the 2016 Review, Van Dellen was credited with generating $387,000 in sales revenue for 2016, and Longo noted that "[e]ven though [Van Dellen's] production numbers did not meet the goal of $675k, he did an excellent job of bringing revenue to the firm." (*Id*. at 3.)

I.       **Boyd/Gerber**

Van Dellen's largest client and source of sales revenue was The Boyd Group, also known as Gerber Collision & Glass ("Boyd/Gerber"). (Pl. Dep. at 62–63, 169.) In September 2016, in a process completely separate from Van Dellen, Aon requested amendments to its contract with Boyd/Gerber, which did not sit well with Boyd/Gerber. (*See* ECF No. 48-1 at 239 (stating "it really looks like Aon was using this tech change to improve their position in this agreement in the middle of the contract term without any explanation. That's simply unacceptable.").) Aon and Boyd/Gerber eventually reached an agreement to amend the contract in February 2017. (Pl. Dep. at 143–46.) Soon thereafter, Boyd/Gerber began a request for proposal ("RFP") process for its business. Again, Van Dellen was not a part of the process. Aon lost the RFP in June 2017, and thus Van Dellen's largest client was no longer with Aon. (*Id*. at 155, 165–66.)

II.      **Aon's Retrenchment Efforts**

In the summer of 2017, Aon's executive leadership discussed the need to "reduce expenses." (ECF No. 48-1 at 340.) To that end, an August 4–16, 2017 email chain between Regional Managing Director Jennifer Bell and Human Resources Advisor Paula Johnson (also known as Paula Van der Vieren) addressed the possible termination of several Aon employees. (ECF No. 42-3 at 46–48 ("Pl. Dep. Ex. 36").) The email provides a color-coded table listing "the position eliminations" of several employees in red, and "colleagues in

green [who] are Producers."[1] (*Id*. at 46.) The status of the colleagues in red states "OK to eliminate position." (*Id*. at 47.) Van Dellen's name is in green, and his status was "Term after IP if not meeting IP." (*Id*.)

### III.   Aon's Guidelines Addressing Performance Issues

Aon's written guidelines on "Addressing Performance Issues" state that managers should take progressive steps to address an employee's performance deficiency before considering implementing a performance Improvement Plan ("IP"). (ECF No. 48-2 at 48–53 ("Aon Guidelines") at 1–2.) The first step is an "informal conversation" with the employee with follow-up documentation, and the second step is a "formal conversation" with follow-up documentation. (*Id*.) The Aon Guidelines note that it is "important that you have both informal and formal discussions with the colleague about expectations and performance gaps prior to using the IP."[2] (*Id*. at 2.) Aon Human Resources Specialist Anjana Pillarisetty testified that she emailed the Aon Guidelines to Longo, and that while she asks managers to follow them, "it's typically a business decision," and managers

---

[1] Van Dellen cites to a heavily redacted black-and-white version of this email chain that Aon initially produced in discovery. (ECF No. 48-2 at 2-4.) Aon produced a less redacted color version when it realized that the first version caused confusion. (Pl. Dep. Ex. 36.) Van Dellen conceded that he was not identified for position elimination in this email. (Pl. Dep. at 290–92.)

[2] Aon Guidelines also list "common mistakes" made when managing an IP, including having expectations that are "unrealistic," or "unachievable in the time frame established," and failing to provide "necessary support or resources (*e.g.*, not meeting regularly to review the plan with the colleague)." (Aon Guidelines at 5.)

"don't have to listen or comply to [her] request." (ECF No. 48-2 at 6 ("Pillarisetty Dep.")

at 38–42.)

### IV.    Van Dellen's IP

On July 20, 2017, Pillarisetty emailed Johnson stating: "*Due to pressure to reduce*

*expenses*, the business would like to place [Van Dellen] on an IP." (ECF No. 48-1 at 340

(emphasis added).) Pillarisetty also notes that:

- Van Dellen "has the highest salary."

- "There was talk to reduce [Van Dellen's] salary (from $234,710) but
  it was never implemented because it corresponded with 3 potential
  opportunities that arose."

- Van Dellen was "the top producer in the Mpls office over the last
  couple [of] years," but was "no longer the top producer."

- "In June of this year (6/8/17), [Van Dellen] lost Gerber, which has
  historically been about 80% of his production (penetration) over the
  last 4 years."

- Longo "has a monthly team meeting where everyone sees their
  numbers and he meets individually with each producer once a
  month to review their numbers."

- Longo told her "he has had many conversations with [Van Dellen]
  around lack of sales . . . and the fact that [Van Dellen] needs to have
  more than one account."

(*Id*.) No manager took the progressive steps identified in the Aon Guidelines to address

Van Dellen's performance deficiency before implementing an IP. (Pillarisetty Dep. at 40;

*see id.* at 71–72, 18–19.) In August 2017, Pillarisetty recommended to Longo and Johnson

that Van Dellen undergo "performance coaching" before being subject to a formal IP. (*Id.* at 71, 73–74.) But Longo and Johnson insisted that the IP be imposed. (*Id.* at 73.)

Longo decided to implement Van Dellen's IP approximately one month after losing the Boyd/Gerber account. (ECF No. 48-1 at 153 ("Longo Dep.") at 70.) After Van Dellen's 2016 performance review in March 2017, Longo did not have conversations with him about his sales performance. (Pl. Dep. at 175–76, 184.) On August 29, 2017, Longo informed Van Dellen he was being placed on an IP. (ECF No. 48-2 at 55–59 ("IP").) The IP states that with the loss of Boyd/Gerber, Van Dellen's "new business production has been very limited and below expectations,"[3] Van Dellen's "ability to produce new revenue has proven ineffective with the exception of one account which was lost to a competitor this year," and he was "not producing new business."[4] (IP at 2.) The IP also indicated that Longo and Van Dellen would meet biweekly to assess and monitor Van Dellen's progress. (*Id.* at 2.) There was no specific sales number that Van Dellen had to meet to successfully complete the IP, but he needed to show meaningful progress in production. (Longo Dep. at 47–48.) Longo acknowledged that the IP was "poorly drafted." (*Id.* at 46, 48.)

---

[3] Van Dellen asserts that the revenue produced and recognized by Aon in 2017 was the same because Aon's contract with Boyd/Gerber did not end in 2017. (Pl. Dep. at 173, 192.)

[4] Van Dellen maintains that he had produced "a few thousand dollars" of new business in early 2017. (Pl. Dep. at 193–94.)

Longo testified that Van Dellen would not have been placed on the IP if Aon had not lost the Boyd/Gerber account. (*Id*. at 70–71.) He also testified that when he imposed the IP on Van Dellen, he told Van Dellen that he would "have to pull a rabbit out of a hat" to meet the IP's objectives. (*Id*. at 85–86.) Longo offered Van Dellen the opportunity to mutually terminate his employment. (Pl. Dep. at 185, 199.) Van Dellen did not agree to terminate. (*Id*.)

Van Dellen's IP was extended for three weeks to November 3, 2017, "due to inconsistent results." (ECF No. 48-2 at 135.) The revised IP included weekly dates on which they were to meet to discuss the result of his performance goals. (*Id*. at 135–40.) Longo did not meet with Van Dellen biweekly while he was on the IP. (Pl. Dep. at 197, 208.) The IP was extended twice, over Longo's objections, to December 7, 2017. (*See* Pillarisetty Dep. at 51–52.)

On October 20, 2017, Longo emailed Van Dellen a summary of sales opportunities in Van Dellen's "pipeline" that Van Dellen was actively prospecting. (ECF No. 48-2 at 139–40.) Producers are expected to maintain a "pipeline" of potential business opportunities, including identifying prospective clients. (Longo Decl. ¶ 4.) Identifying a prospective client does not mean that the Producer will generate business from that prospect. (*Id*.) Van Dellen's IP included a pipeline goal of identifying and developing "at least $1,575,000 of tangible revenue opportunities at 25% or greater." (IP at 3.) Van Dellen believes he achieved this goal. (Pl. Dep. at 200–01.) While on the IP, Van Dellen also closed

three sales totaling at least $161,000 in revenue to Aon. (Pl. Dep. at 194 (new client Nor-Son Construction resulting in $120,000 in revenue), 212–13 (new business with Metropolitan Airports Commission resulting in $41,000 in revenue), 223 (new business with the City of St. Paul).)

In early November, Longo informed Van Dellen that the IP would be extended for another 30 days to December 7, 2017. (Pl. Dep. at 228; *see* Pillarisetty Dep. at 51–52.) At that time, Longo again offered to mutually end Van Dellen's employment. (Pl. Dep. at 228.) Van Dellen did not accept this offer. (*Id*.)

### V.    Van Dellen's Termination

Aon terminated Van Dellen on December 7, 2017. (ECF No. 48-2 at 61 ("Johnson Dep.") at 16.) Longo made the decision to terminate Van Dellen, but Bell, Johnson, and Pillarisetty were also involved with the decision. (*Id*. at 17.) During the termination meeting, Johnson told Van Dellen that he was being terminated in part because he "had a high salary and that they needed to reduce expenses." (Pl. Dep. at 242.) Longo also told Van Dellen that his termination was "in large part due to expense reduction." (*Id*. at 289.) Johnson told Van Dellen that he would not receive any severance benefits because Aon was characterizing his termination for performance—for not meeting his sales goal. (*Id*. at 242–43.) Longo expressed surprise that Van Dellen would not receive severance benefits. (*Id*. at 244.) Before the termination meeting, Longo told Van Dellen that he assumed Van Dellen would receive severance benefits. (*Id*. at 241.) Van Dellen was 53

years old and the oldest Producer in Aon's Minneapolis office at the time of his termination. (ECF No. 48-4 at 41 (Aon Interrog. Ans. 20).) Following Van Dellen's termination, Aon Account Executives continued to service Van Dellen's accounts. (Longo Decl. ¶ 8.)

The day after Van Dellen's termination, Johnson emailed Aon Corporate Benefits stating, "I have a colleague who was just termed (*position eliminated*) yesterday (Henry Van Dellen) . . . . " (ECF No. 48-4 at 5 (emphasis added).) Johnson later testified that Van Dellen's termination was not a position elimination and that the statement in her email was a "total error" because Aon does not eliminate Producer positions. (Johnson Dep. at 99, 102–03, 111–12.) Indeed, eight minutes after sending that email, Johnson emailed Bell stating, "we termed Henry Van Dellen for performance." (ECF No. 42-4 at 43.) In other email communications including Johnson, Van Dellen's termination is referred to as a termination for performance. (*E.g.,* ECF No. 42-4 at 31–37.) Aon presents evidence that it does not eliminate Producer positions and is always looking to hire successful Producers to generate revenue. (*E.g.*, Johnson Dep. at 41–42, 99, 102–03, 111–12; Longo Decl. ¶ 9.)

## VI.    Aon's Severance Plan

Aon's Severance Plan permits the payment of severance benefits for a qualifying termination of employment. (ECF No. 48-4 at 7–24 ("Severance Plan").) As relevant here, a "qualifying termination of employment" means any termination with Aon if:

- Your job has been eliminated and you have made a good faith effort to secure another position with the Company and there is no

> possibility that another position may be secured with the Company
> . . .
> • Your employment is terminated by mutual agreement between you
>   and the Company.

(*Id*. at 2.) Employees "are not eligible for a severance benefit if your employment is terminated for any reason other than a 'qualifying termination of employment' as previously described." (*Id*.) Van Dellen submitted an ERISA claim for severance benefits, which Aon denied because his termination was not a "qualifying termination of employment" under the Severance Plan. (AC ¶¶ 79–80.) Van Dellen's appeal of this decision was denied in July 2018. (*Id*. ¶ 85.)

### VII.   Van Dellen's Alleged Replacement

Van Dellen maintains that he was replaced by Brandon Raaf, who was less experienced and 31 years old at the time of his hire. (Pl. Dep. at 259; ECF No. 48-4 at 40 (Aon Interrog. Ans. 18).) Longo began recruiting Raaf in May 2017. (Longo Dep. at 146.) Raaf was offered a position with Aon in mid-November 2017 and started as a Producer in January 2018. (ECF No. 48-4 at 27, 29.)

The parties dispute whether Aon assigned Van Dellen's prospective clients to Raaf. Van Dellen attests that during his tenure as an Aon Producer, prospects were assigned to one Producer for all lines of business, and that several prospects in his pipeline were assigned to Raaf upon his termination. (ECF No. 47 ("Pl. Aff.") ¶¶ 3–5.) Raaf's prospect list included several of Van Dellen's prospects. (ECF No. 48-3 at 11–12 ("Raaf's Prospect List"); Pl. Aff. ¶ 5; Pl. Dep. at 235–38.) Longo disagrees, attesting that

"it is not uncommon for multiple Producers to identify some of the same prospects as part of their pipeline," and that "[n]one of the entities identified by [Van Dellen] as his prospects in [Raaf's Prospect List] were taken over by, or assigned to, any other Producer upon [Van Dellen's] departure." (Longo. Decl. ¶¶ 5–6.)

## VIII.   Other Aon Producers

The same day Longo placed Van Dellen on an IP, he also notified Producer Jason R. (age 36) that he would be going on an IP. (Longo Dep. at 27–31, 43–45, 60; ECF No. 48-4 at 39–40 (Aon Interrog. Ans. 16).) Jason R. resigned instead. (Aon Interrog. Ans. 16; Longo Dep. at 27–29, 45.)

Other Producers in Aon's Minneapolis office were placed on IPs for lack of production, and ultimately terminated or resigned in lieu of termination. Jason K. was placed on an IP in 2015 and resigned in lieu of termination when he was 32 years old. (ECF No. 48-4 at 34–35 (Aon Interrog. Ans. 6); Longo Dep. at 144–45.) In 2014, Adam W. was terminated at the age of 43 for failing to meet the expectations of his IP. (Aon Interrog. Ans. 6, 16.) In April 2017, producer Kyle S. resigned from Aon before being placed on an IP at the age of 37. (Aon Interrog. Ans. 16; Longo Dep. at 26–27.) In 2018, Jeff F. was terminated at 48 for failing to fulfill the expectations of his IP. (Aon Interrog. Ans. 6, 16.)

Aon hired two Producers in their 40s in 2017. (ECF No. 48-4 at 40.)

### IX.    Allegedly Discriminatory Remarks

Van Dellen testified that between 2015 and 2017, Longo "talked at length . . . about his desire to hire younger, cheaper producers" approximately four times. (Pl. Dep. at 266–67.) These comments were "not specifically with regard" to Van Dellen. (*Id*. at 266.) Jim Shoop, Aon's former Resident Managing Director of the Minneapolis office, also spoke of "the need to reduce the average age of [Aon's] staff." (*Id*. at 75, 269.)

### X.    Procedural History

Van Dellen filed his original complaint in state court. It was removed to federal court based on diversity jurisdiction in January 2019. (ECF No. 1.) Van Dellen then filed an amended complaint alleging age discrimination under the Minnesota Human Rights Act ("MHRA"), Minn. Stat. § 363A, *et seq*. (Count I), a violation of the Minnesota Whistleblower Act ("MWA"), Minn. Stat. § 181.932 (Count II), a declaratory action claim (Count III), and wrongful termination under ERISA § 510, 29 U.S.C. § 1140 (Count IV). Aon answered the Complaint and the parties engaged in discovery. After the close of discovery, the parties stipulated to the dismissal of Count III. (ECF Nos. 32, 38.)

Aon filed a motion for summary judgment on all remaining claims. (ECF No. 39.) At the hearing on this motion, Van Dellen informed Aon and the Court that he was abandoning his MWA claim (Count II). This claim was subsequently dismissed by joint stipulation. (ECF No. 58.) Only Van Dellen's MHRA and ERISA § 510 claims remain.

## ANALYSIS

### I.     Summary Judgment Standard

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (citation omitted); *see* Fed. R. Civ. P. 56(a). A dispute over a fact is "material" only if its resolution might affect the outcome of the litigation under the governing substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "The non-moving party receives the benefit of all reasonable inferences supported by the evidence, but has the obligation to come forward with specific facts showing that there is a genuine issue for trial." *B.M. ex rel. Miller v. S. Callaway R-II Sch. Dist.*, 732 F.3d 882, 886 (8th Cir. 2013) (citation and quotation marks omitted). "A complete failure by the non-moving party 'to make a showing sufficient to establish the existence of an element essential to that party's case . . . necessarily renders all other facts immaterial.'" *Id*. (quoting *Celotex*, 477 U.S. at 322–23).

### II.    MHRA Age Discrimination Claim

Van Dellen alleges that Aon violated the MHRA, which prohibits an employer from discharging an employee based on the employee's age. Minn. Stat. § 363A.08, subd. 2(2). Claims under the MHRA are analyzed using the same standards that apply to claims brought under the federal Age Discrimination in Employment Act. *Aulick v.*

*Skybridge Americas, Inc.*, 860 F.3d 613, 620 (8th Cir. 2017). "An age discrimination plaintiff may survive the defendant's motion for summary judgment either by setting out direct evidence of discrimination or by creating an inference of discrimination" under the burden-shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *Ramlet v. E.F. Johnson Co.*, 507 F.3d 1149, 1152 (8th Cir. 2007). Van Dellen attempts to prove this claim using both types of evidence.

### A. Direct Evidence of Age Discrimination

Van Dellen asserts that he presents direct evidence of Aon's age discrimination. Direct evidence shows a "specific link" between the alleged discriminatory animus and the challenged decision "sufficient to support a finding by a reasonable fact finder that an illegitimate criterion actually motivated the adverse employment action." *Aulick*, 860 F.3d at 620 (citation omitted); *see Naguib v. Trimark Hotel Corp.*, 903 F.3d 806, 811 (8th Cir. 2018) ("Direct evidence shows a 'specific link' between the alleged animus and the termination sufficient to support a substantially strong inference that the employer acted based upon that animus."). Direct evidence "may include evidence of actions or remarks of the employer that reflect a discriminatory attitude, comments which demonstrate a discriminatory animus in the decisional process, or comments uttered by individuals closely involved in employment decisions." *King v. United States*, 553 F.3d 1156, 1161 (8th Cir. 2009) (citation and brackets omitted). "But stray remarks in the workplace, statements by nondecisionmakers, or statements by decisionmakers unrelated to the

decisional process do not constitute direct evidence." *Aulick*, 860 F.3d at 620 (citation and quotation marks omitted).

For comments to be direct evidence, a plaintiff must demonstrate "a specific link between the comments and his termination." *Ramlet*, 507 F.3d at 1153. The Eighth Circuit has held that comments do not constitute direct evidence of a discriminatory termination where the comments were made outside the termination decisional process and pre-dated the termination by a period of time. *E.g.*, *id.* ("The comments were not related to the decisional process as the most recent occurred at least four months before [plaintiff's] termination, and both were made to employees not involved in the decisional process."); *Bone v. G4S Youth Servs., LLC*, 686 F.3d 948, 954 (8th Cir. 2012) (holding that decisionmakers' lack of reaction to a client's inappropriate comment made six months before defendant decided to terminate plaintiff were "stray remarks" "unrelated to the decisional process" and thus not direct evidence of discrimination); *Naguib*, 903 F.3d at 812 (finding no direct evidence of age discrimination where plaintiff pointed "only to a stray remark . . . that occurred months before the termination process"); *see also Bernard v. St. Jude Medical S.C., Inc.*, 398 F. Supp. 3d 439, 462 (D. Minn. 2019) (finding no direct evidence of age discrimination where comments about "stepping aside and letting the younger folks have a chance," were mere "stray remarks" as they were made outside of the termination decisional process and pre-dated the plaintiff's termination "by approximately a year").

Here, Van Dellen relies on a statement by Shoop about Aon's "need to reduce the average age of our staff." (Pl. Dep. at 269.) Because it is undisputed that Shoop was not a decision maker with respect to Van Dellen's termination, Shoop's statement is not direct evidence of discrimination. *See Aulick*, 860 F.3d at 620 (noting that "statements by decisionmakers unrelated to the decisional process do not constitute direct evidence").

Van Dellen also points to his own testimony that Longo—who was a decisionmaker—"talked at length over a period of time, predating even 2017, about his desire to hire younger, cheaper producers;" these statements were "not specifically with regard to [Van Dellen]." (Pl. Dep. at 266–67.) He recalls Longo making these statements approximately four times between 2015 and 2017. (*Id*. at 267.) Because Aon decided to place Van Dellen on the IP after it lost the Boyd/Gerber account in June 2017, comments made before then were outside the termination decisional process, and thus are not direct evidence. And even if Longo's comments were made after Aon lost the Boyd/Gerber account, Longo's desire to hire "younger, cheaper producers" is not direct evidence that Aon wanted to terminate older Producers. (Pl. Dep. at 266.) In addressing Longo's comments, Van Dellen explained that "the insurance industry is a very graying industry," a priority was placed on trying to hire younger people for "the future health of the office," and "it's understandable why you want to have a pipeline of young talent . . . ." (*Id*. at 268–269.) "Viewed in context, these remarks, even though stated by a decisionmaker, do not establish an inference of age animus and require more than [Van

Dellen] offers to support such a leap under the direct method." *Wagner v. Gallup, Inc.*, 788 F.3d 877, 884 (8th Cir. 2015). Giving Van Dellen the benefit of all reasonable inferences supported by the evidence, the Court finds that Longo's and Shoop's comments do not amount to direct evidence of age discrimination.

### B.  McDonnell-Douglas *Analysis*

Because Van Dellen also offers circumstantial evidence of age discrimination, the Court will engage in the *McDonnell-Douglas* burden shifting analysis. Van Dellen must first establish a prima facie case of age discrimination. *Ramlet*, 507 F.3d at 1153. If he establishes a prima facie case, the burden shifts to Aon to articulate a "legitimate, nondiscriminatory reason" for terminating the plaintiff. *Id*. If Aon can provide such a reason, the burden shifts to Van Dellen to demonstrate that the proffered reason was a pretext for age discrimination. *Id*.

### 1.  Prima Facie Case of Age Discrimination

In order to establish a prima facie case for age discrimination under the MHRA, Van Dellen must show that he was: (1) a member of a protected class; (2) qualified for the position; (3) terminated despite his qualifications; and (4) replaced by a younger worker. *Mallon v. U.S. Physical Therapy, Ltd.*, 395 F. Supp. 2d 810, 820 (D. Minn. 2005) (citing *Ward v. Employee Dev. Corp.*, 516 N.W.2d 198, 201 (Minn. Ct. App. 1994)). The parties do not dispute that Van Dellen was qualified for the position of Producer and was 53 years old

at the time of his termination. Van Dellen maintains that he was replaced by Raaf, a 31-year old Producer. Aon denies replacing him.

A plaintiff "is not replaced when another employee is assigned to perform the plaintiff's duties in addition to other duties, or when the work is redistributed among other existing employees already performing related work. A person is replaced only when another person is hired or reassigned to perform the plaintiff's duties." *Naguib v. Trimark Hotel Corp.*, No. 15-CV-3966 (JNE/SER), 2017 WL 598760, at *11 (D. Minn. Feb. 14, 2017) (quoting *Dietrich v. Can. Pac. Ltd.*, 536 N.W.2d 319, 324 (Minn. 1995)). Here, Van Dellen and Raaf had same position title and duty of business development. Van Dellen attests that prospects were assigned to one Producer for all lines of business and that several prospects that had been assigned to him were taken over by Raaf and included on Raaf's Prospect List. (Pl. Aff. ¶¶ 3–4.) Aon challenges the basis of Van Dellen's testimony about prospective clients, maintaining that it is not uncommon for multiple Producers to identify the same prospects in their pipelines, that Van Dellen's prospects were not assigned to another Producer upon his termination, and that Aon would have hired Raaf regardless of whether it had terminated Van Dellen. (Longo Decl. ¶¶ 5–6, 9.)

Van Dellen has put forth evidence that he and younger employee Raaf had same title and duties, and that his prospects were assigned to Raaf. This evidence, coupled with the timing of Raaf's hiring, raise a genuine issue of material fact as to whether Van Dellen was replaced by Raaf. *See Kirsch v. St. Paul Motorsports, Inc.*, No. 11-CV-2624 (MJD), 2013

WL 1900620, at *5 (D. Minn. May 7, 2013) (finding plaintiff put forth evidence that he may have been replaced by a younger employee). While Aon challenges Van Dellen's testimony as to whether his prospects were assigned to Raaf, this is an issue of credibility for the jury to decide. *See Reeves v. Sanderson Plumbing Prod., Inc.,* 530 U.S. 133, 150 (2000) ("Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge.").

### 2.   Legitimate, Non-Discriminatory Reason for Termination

Aon has articulated a legitimate, non-discriminatory reason for Van Dellen's termination: poor performance. (ECF No. 41 at 27); *see Fiero v. CSG Sys., Inc.,* 759 F.3d 874, 878 (8th Cir. 2014) (holding "performance-related concerns constitute legitimate, non-discriminatory justifications" for discharge). Van Dellen's performance reviews from 2015 notes his failure to meet the performance goal, and rated him below expectations for new business production. (*See* 2016 Review.) While Van Dellen's 2016 performance review rates him at meets expectations for new business production, this review occurred before Aon lost the Boyd/Gerber account. Longo testified that Van Dellen would not have been placed on the IP if they had not lost the Boyd/Gerber account. (Longo Dep. at 69–71.)

### 3.   Pretext

Because Aon has articulated a legitimate, non-discriminatory reason for terminating Van Dellen, Van Dellen must show that this reason is pretextual. *Ramlet*, 507

F.3d at 1153. To do so, a "plaintiff may show that the employer's explanation is unworthy of credence because it has no basis in fact. Alternatively, a plaintiff may show pretext by persuading the court that a prohibited reason more likely motivated the employer." *Aulick*, 860 F.3d at 621 (citation omitted). "Proof of pretext, coupled with a strong prima facie case, may suffice to create a triable question of fact as to whether the termination was motivated by intentional discrimination." *Bone*, 686 F.3d at 955 (citation and quotation marks omitted). Van Dellen presents several types of evidence to prove pretext:

*History of positive performance.* Prior to being on the IP, Van Dellen had a history of good performance. He was the top Producer in his office in 2015 and 2016. His 2016 Review met overall expectations, and Longo noted that while Van Dellen had not met his sales goal, he did "an excellent job of bringing revenue to the firm." (2016 Review at 3.) *See Sieden v. Chipotle Mexican Grill, Inc.*, 846 F.3d 1013, 1018 (8th Cir. 2017) (noting that "a history of positive performance reviews can be powerful evidence of satisfactory performance"). And as noted above, most other Producers failed to meet the three-times-base-salary sales goal as well. Before the IP, Aon did not informally or formally discuss with Van Dellen any performance problems.

*Changing reasons for termination.* Aon's explanations for terminating Van Dellen changed over time. "Substantial changes over time in the employer's proffered reason for its employment decision support a finding of pretext." *Aulick*, 860 F.3d at 621 (quoting *Kobrin v. Univ. of Minn.*, 34 F.3d 698, 703 (8th Cir. 1994)). The plaintiff "must show that

the reasons are completely different, not minor discrepancies." *Sieden*, 846 F.3d at 1018. At the termination meeting, Van Dellen was told he was being terminated because of his high salary, and due to expense reduction. (Pl. Dep. at 242, 289; *see also* ECF No. 48-1 at 340 (stating Aon would like to place Van Dellen on an IP "[d]ue to pressure to reduce expenses," and that he had the highest salary in the Minneapolis office).) Aon maintains Van Dellen was terminated for poor performance, *i.e.*, failing to meet his sales goals. (Johnson Dep. at 42–43; Pl's Dep. at 243.) The evidence of shifting reasons for Van Dellen's termination, combined with other evidence in this case, raises a genuine issue of material fact as to whether Aon's reasons are pretextual. *See Fitzgerald v. Action, Inc.*, 521 F.3d 867, 874 (8th Cir. 2008) (finding that "a rational trier of fact could find the employer's varying reasons for the employee's termination are evidence of pretext").

*Variation from company policy*. In placing Van Dellen on an IP, Aon varied from its guidelines addressing performance issues. An employee can prove pretext through evidence the employer varied from its normal policy or practice to address the employee's situation. *Fitzgerald*, 521 F.3d at 874; *see Hite v. Vermeer Mfg. Co.*, 446 F.3d 858, 867 (8th Cir. 2006) (explaining that an employee could show pretext where he "was discharged pursuant to an inconsistent policy"). Here, Longo failed to follow the Aon Guidelines' two steps of having informal and formal conversations with follow-up documentation with Van Dellen. He decided to skip both steps, despite HR's recommendation. Longo failed to meet regularly with Van Dellen to review the IP, as

promised in the IP. Moreover, Longo's comment that Van Dellen would have to "pull a rabbit out of a hat," coupled with his objections to extending the IP and his statement to Pillarisetty that "[r]ealistically he won't write any business in 3–4 weeks," indicate that the IP was unachievable in the time frame established. (Longo Dep. at 85–86, ECF No.48-2 at 132.)

*Treatment of other Producers.* Van Dellen claims that while one justification for his termination was his failure to reach the three-times-base-salary sales goal, only one other Producer achieved this goal in 2017. (ECF No. 50 ("Pl. Opp.") at 27.) An employee can show pretext with evidence that "the employer routinely treated similarly situated employees who were not in the protected class more leniently." *Hite*, 446 F.3d at 867. "To be similarly situated, a plaintiff must show that he and the more leniently treated employees have comparable disciplinary histories." *Lindeman v. Saint Luke's Hosp. of Kansas City*, 899 F.3d 603, 606 (8th Cir. 2018) (cleaned up). Here, Van Dellen offers evidence that only one Producer in the Minneapolis office achieved the three-times-base-salary goal in 2017, and no Producer achieved this goal in 2016, 2015, or 2014. But Van Dellen fails to provide any context demonstrating the other Producers were similarly situated. *Cf. id.* (holding plaintiff must show that the employees "dealt with the same supervisor, have been subject to the same standards, and engaged in the same conduct without any mitigating or distinguishing circumstances"). In contrast, Aon offers evidence of several younger Producers who were placed on IPs and were terminated, or

23

who resigned in lieu of being placed on an IP or termination. (*See* Aon Interrog. Ans. 6, 16.) The Court finds that Van Dellen has not raised a genuine issue of fact as to whether younger Producers were treated more leniently than he.

*Statements by Longo and Shoop.* Finally, Van Dellen points to the comments of Longo and Shoop as evidence of pretext. Age discrimination can be proven where a jury reasonably could infer that a top management official's "stated preference for younger employees motivated [a supervisor's] decision to terminate" the plaintiff. *Morse v. Southern Union Co.*, 174 F.3d 917, 923 (8th Cir. 1999) (affirming jury verdict). Both Longo and Shoop had held the position of Aon Resident Managing Director. While their statements regarding hiring "younger, cheaper producers" and "the need to reduce the average age of [Aon's] staff," respectively, do not rise to the level of direct evidence of age discrimination, they do raise a question of whether age bias motivated Van Dellen's termination. (Pl. Dep. at 266–67, 269.)

The Court "must draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence." *Chemers v. Minar Ford, Inc.*, No. 00-CV-1623 (ADM/AJB), 2001 WL 951366, at *4 (D. Minn. Aug. 20, 2001) (quoting *Reeves*, 530 U.S. at 150). Crediting the evidence above, Van Dellen has raised a genuine issue of material fact as to whether Aon's reason for terminating him was pretextual. A jury must resolve what role, if any, Van Dellen's age played in his termination.

### III.   ERISA § 510 Claim

Van Dellen claims that Aon violated ERISA § 510 by terminating his employment without providing severance benefits. ERISA § 510 makes it unlawful for an employer to discharge an ERISA plan participant "for the purpose of interfering with the attainment of any right to which such participant may become entitled under the plan." 29 U.S.C. § 1140. To prevail under § 510, Van Dellen must prove that Aon had "specific intent to interfere with [his] benefits." *Barnhardt v. Open Harvest Co-op.*, 742 F.3d 365, 369 (8th Cir. 2014) (cleaned up). Specific intent to interfere means "the plaintiff's entitlement to ERISA benefits had 'a determinative influence' on the defendant's decision." *Id.* (quoting *Koons v. Aventis Pharms., Inc.*, 367 F.3d 768, 777 (8th Cir. 2004)). "In other words, [Van Dellen] ha[s] to show that he would not have been terminated had he not been entitled to benefits." *Koons*, 367 F.3d at 777.[5]

Because Van Dellen has not identified any direct evidence that Aon acted with specific intent to interfere with his severance benefits, the Court analyzes his § 510 claim under the *McDonnell-Douglas* burden-shifting framework. *Barnhardt*, 742 F.3d at 369. Van Dellen must establish a prima facie case by showing that (1) he was likely to receive future benefits, (2) he was subject to an adverse employment action, and (3) a causal connection

---

[5] The Eighth Circuit has explained why an employer's specific intent is required. "Many instances of interference—such as termination of ERISA benefits incident to an otherwise-permissible termination of employment—occur without giving rise to § 510 liability. Otherwise, every employee discharged by a company with an ERISA plan would have a claim under § 510." *Barnhardt*, 742 F.3d at 370 (citations and quotation marks omitted).

exists between the adverse employment action and the likelihood of future benefits. *Sturge v. Northwest Airlines, Inc.*, 600 F. Supp. 2d 1040, 1044 (D. Minn. 2009), *aff'd*, 658 F.3d 832 (8th Cir. 2011). If Van Dellen makes a prima facie case of discrimination, the burden shifts to Aon to articulate a nondiscriminatory reason for the termination. *Pendleton v. QuickTrip Corp.*, 567 F.3d 988, 992 (8th Cir. 2009). If Aon does so, then the burden shifts back to Van Dellen to prove that Aon's proffered reasons are pretextual. *Id*. Aon argues that Van Dellen's § 510 claim fails because he cannot establish the second and third elements of his prima facie case: entitlement to severance benefits and causal connection.

Aon maintains that Van Dellen's termination was not a "qualified termination of employment" under the Severance Plan, and therefore, he is not entitled to severance under its terms. To determine if Van Dellen was entitled to severance benefits, the Court first examines the ERISA plan documents. *Pendleton*, 567 F.3d at 992. Aon's Severance Plan identifies several "qualifying termination of employment" events entitling a departing employee to severance benefits. (Severance Plan at 2.) The parties focus on two events: (1) termination "by mutual agreement" between the employee and Aon; and (2) job elimination. (*Id*.) Employees are not eligible for a severance benefit if their employment "is terminated for any reason other than a 'qualifying termination of employment' as previously described." (*Id*.)

The record is clear that Van Dellen was not terminated by mutual agreement. While Longo repeatedly offered Van Dellen the option to do so, he rejected it. (Pl. Dep.

at 185, 199, 228.) Van Dellen offers no legal authority to support his position that he is entitled to severance benefits based on termination by mutual agreement, despite rejecting offers to do so. *See Milligan v. City of Red Oak, Iowa*, 230 F.3d 355, 360 (8th Cir. 2000) (finding that an assertion not supported "with any argument or legal authority" need not be addressed).[6]

Van Dellen also argues that Aon "repeatedly referred to [his] termination as a 'position elimination.'" (Pl. Opp. at 33.) But the only evidence indicating his position was eliminated is in an email that Johnson sent the day after his termination; Johnson explained that this was "a total error." (Johnson Dep. at 103, 111–12.) Aon offers testimony and multiple emails stating that Van Dellen was terminated for performance reasons, including an email sent by Johnson eight minutes after the email on which Van Dellen relies. Aon also presents testimony that it does not eliminate Producer positions, and that Van Dellen was terminated for reasons unrelated to severance benefits.[7] (*E.g., id.* at 41–42, 99.) For these reasons, Van Dellen fails to raise a genuine issue of material fact as to whether a "qualifying termination of employment" occurred here. *See Pendleton*, 567

---

[6] In addition to the fact that the record does not support Van Dellen's argument on mutual agreement to terminate, it is inconsistent with his assertion that his termination violated the MHRA.

[7] While Van Dellen has raised a genuine issue of material fact as to whether Aon's proffered reason for termination, *i.e.*, his performance, was pretext for age discrimination, the record does not support his argument that his termination was a qualifying termination of employment.

F.3d at 993 (holding plaintiff could not establish prima facie case because plaintiff was not entitled to benefits under the language of the severance plan); *Chambers v. The Travelers Cos., Inc.*, 764 F. Supp. 2d 1071, 1092 (D. Minn. 2011), *aff'd,* 668 F.3d 559, 567 (8th Cir. 2012) (affirming dismissal of plaintiff's severance interference claim where plaintiff was terminated for poor job performance and severance plan did not provide for severance in such circumstances). Because Van Dellen's termination was not a "qualifying termination of employment" under the terms of the Severance Plan, his § 510 claim fails.

Aon also argues that Van Dellen cannot prove a causal connection between his termination and the likelihood of his receiving severance benefits because nothing suggests that his termination was connected to such benefits. (ECF No. 51 at 8–9.) Van Dellen responds that Aon's "actions establish its intent to deprive Plaintiff of his right to severance benefits under the Aon Severance Plan." (Pl. Opp. at 33.) He also asserts that Longo told him he was being terminated because of his salary level. (*Id*.) But evidence that a termination was motivated by a need to cut costs, standing alone, does not establish the specific intent required for a § 510 claim. *See, e.g., Regel v. K-Mart Corp.*, 190 F.3d 876, 881 (8th Cir. 1999) (affirming summary judgment on § 510 claims, concluding that any interference with plaintiffs' ERISA benefits "was merely 'incidental' to an adverse employment action motivated by a need to cut costs", quoting *Morris v. Winnebago Inds., Inc.*, 950 F. Supp. 918, 926 (N.D. Iowa 1996) (dismissing § 510 claim where plaintiff was

terminated to rectify employer's budget problems, concluding that employer considered employee's salary, not his benefits, in deciding to terminate employee)); *Koons*, 367 F.3d at 779 ("if the loss of severance benefits is only incidental to the termination, [the plaintiff] would also not be entitled to relief").

Van Dellen offers no evidence indicating Aon "had a specific intent to interfere with his benefits," *Pendleton*, 567 F.3d at 992 (brackets omitted), or that it was "a motivating factor" in Aon's decision to terminate him, *Koons*, 367 F.3d at 777. Van Dellen's discussions with Longo—the primary decisionmaker—about his severance benefits indicate that Longo believed that Van Dellen would receive severance benefits. Van Dellen testified that before being terminated, Longo told him that he assumed Van Dellen would receive severance benefits, and that Longo "expressed surprise" upon learning at the termination meeting that Van Dellen would not receive severance benefits. (Pl. Dep. at 241, 244). On this record, Van Dellen cannot establish that a connection between the decision to terminate him and his benefits, and this is fatal to his claim. *See Sturge*, 658 F.3d at 840 (affirming dismissal of § 510 claim in part because plaintiff presented "no evidence connecting the decisionmaker on [plaintiff's] termination to the processing of [his] application for disability retirement"). Van Dellen's § 510 claim is therefore dismissed.

## CONCLUSION

Based on the foregoing and on all the files, records, and proceedings herein, IT IS

HEREBY ORDERED:

1.    Defendant's Motion for Summary Judgment (ECF No. 39) is GRANTED IN PART and DENIED IN PART; and

2.    Count IV is DISMISSED WITH PREJUDICE.


Dated: May 12, 2020                    BY THE COURT:

                                       s/Nancy E. Brasel
                                       Nancy E. Brasel
                                       United States District Judge